June 3, 2024

**MEMO ENDORSED**

<u>Via ECF</u>

The Honorable Jessica G.L. Clarke
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 11B
New York, NY 10007-1312

Re: *Paulino-Santos et al.* v. *Metropolitan Transportation Authority et al.*, 23-cv-03471

Dear Judge Clarke:

     Pursuant to Section 4(k) of Your Honor's Individual Rules and Practices, the parties are submitting this joint letter-motion seeking resolution of a discovery dispute concerning Defendants' Third Set of Interrogatories (the "Interrogatories").

### A. Defendants' Position

     The Interrogatories ask Plaintiffs to specify their desired relief, information plainly relevant to their claims and Defendants' defenses. Plaintiffs allege that Access-a-Ride violates the Americans with Disabilities Act ("ADA"), Rehabilitation Act, and New York City Human Rights Law ("NYCHRL") by (i) requiring rides to be scheduled the day before; (ii) requiring customers to wait up to 30 minutes for rides; and (iii) subjecting riders to excessively long routes. But, while Plaintiffs request an injunction compelling Defendants "to adopt policies and procedures sufficient to remedy the [alleged] violations," Dkt. 1 at 32, the Complaint does not specify (i) how long in advance of a ride they think a ride request should be made; (ii) Plaintiffs' desired maximum wait time; or (iii) how long a route should be. Significantly, all three statutes authorize Defendants to argue that Plaintiffs' desired relief would impose an undue burden/hardship. *Am. Council of the Blind of New York, Inc.* v. *City of New York*, 579 F. Supp. 3d 539, 571, 582–83 (S.D.N.Y. 2021); *Borkowski* v. *Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). As this Court has explained, "the parties' disagreement on undue burden—and, by extension, what accommodations are reasonable—involves fact-intensive inquiries." Dkt. 76 at 30.

     Defendants thus asked Plaintiffs in four Interrogatories to say what they want so expert discovery can proceed as planned and Defendants can mount their burden/hardship defense, asking Plaintiffs to identify (i) how long in advance of a ride they want a request to be made, (ii) the maximum wait time they seek, (iii) how long a route they want, and (iv) what if any other specific changes Plaintiffs want. Ex. A. That information is required for this Court to issue injunctive relief. *S.C. Johnson & Son, Inc.* v. *Clorox Co.*, 241 F.3d 232, 240–41 (2d Cir. 2001). Plaintiffs, however—after missing their deadline to serve responses and objections and then doing so only after Defendants reminded them—have served blanket objections and no sworn responses, thus precluding Defendants from developing their defenses. Importantly, Plaintiffs do not object on relevance or burden grounds. Instead, they have raised three baseless objections.[1] Ex. B.

---

[1] The parties met and conferred on May 7, 2024. The call lasted around 30 minutes (G. Laufer, T. Holoshitz, Y. Barkai, M. Goodell, E. Bass, and B. Wilson participating). Without waiver of their need for answers now, in an effort to compromise, Defendants asked Plaintiffs to identify the Interrogatories that they would answer by the close of fact discovery and those that they would answer by the close of expert discovery. Plaintiffs declined that

1. The Information Sought Is a Proper Topic of the Current Phase of Discovery

*First*, Plaintiffs claim that (i) it is premature for them to answer the Interrogatories now and (ii) they cannot do so without unidentified expert opinions. Plaintiffs are wrong on both scores. The Interrogatories are not premature because both sides agreed—and the Court ordered in the Case Management Plan—that "discovery as to the relief that Plaintiffs seek" would occur during the second, ongoing phase of discovery. Dkts. 43, 46. The Court further ordered that expert discovery would begin in October 2024 and examine "feasibility," which cannot be done without Plaintiffs specifying their desired relief. Dkt. 46. Plaintiffs' position is also inconsistent with the Court's observation that the burden analysis presents "fact-intensive inquiries." Dkt. 76 at 30.

Plaintiffs' supposed need for expert testimony—an objection they first raised during the parties' meet-and-confer but not in their written objections—is also baseless. Plaintiffs have not explained who these witnesses are, what information they will provide concerning the Interrogatories, or when they will provide it. Further, expert witnesses do not tell litigants what injunctive relief to seek; that is the job of the litigants themselves. No expert can tell Plaintiffs what, specifically, Plaintiffs want Defendants to do. Plaintiffs are the *only* repository of that information—information they presumably had, or should have had, in their ken before they filed this lawsuit.

2. The Interrogatories Are Not Contention Interrogatories

*Second*, Plaintiffs characterize the Interrogatories as contention interrogatories, which they say should not be served until 30 days before the close of discovery under Rule 33.3(c). Plaintiffs are mistaken. Defendants' interrogatories neither "ask[] [Plaintiffs] to identify each claim or defense clearly and point to the facts, witnesses, or documents that support them," *Fort Worth Emps. Ret. Fund* v. *J.P. Morgan Chase & Co.,* 297 F.R.D. 99, 110 (S.D.N.Y. 2013), nor require Plaintiffs to "articulate their contentions of the law as they apply to the facts of the case," *In re Facebook Inc.,* 2016 WL 5080152, *2 (S.D.N.Y. July 7, 2016). Defendants simply want Plaintiffs to say what they want Defendants to do with respect to the three alleged violations.

In any event, the Court should authorize the Interrogatories under Rule 33.3(c) given their relevance and Defendants' lack of alternative means to obtain the information. The parties previously agreed that "discovery as to the relief that Plaintiffs seek" should occur during this phase of discovery. Similarly, in *JDS Therapeutics, LLC* v. *Pfizer Inc.*, Judge Rakoff allowed contention interrogatories where the parties and court had agreed to include the relevant discovery in the schedule and where they "would frame the subsequent fact and expert discovery that would take place." 2013 WL 5548932, *1 (S.D.N.Y. Sept. 30, 2013). Here, a "logical exception to Rule 33(c)'s timeline" applies because other discovery "would be unhelpful or unlikely to elicit" the information and because the responses "[s]erve the interest of narrowing issues and streamlining litigation." *In re Facebook*, 2016 WL 5080152, at *4. The circumstances here are even more compelling because the information at issue is in Plaintiffs' possession and, if not provided now, would prejudicially prevent Defendants from mounting statutorily authorized affirmative defenses.

---

request. Plaintiffs agreed to inform Defendants by May 17 whether, given their objections, they would be able to answer any of the Interrogatories by the close of expert discovery. Plaintiffs did not do so.

Further, Plaintiffs' reliance on a settlement proposal is highly improper and squarely contrary to established practice—a point we raised with Plaintiffs but to no avail. Needless to say, there is a big difference between a settlement proposal and usable discovery. And, if Plaintiffs are right that they have outlined their claimed relief in a settlement proposal, then they can surely do so in sworn interrogatory responses.

2

Further, Plaintiffs' contention that Defendants are not entitled to discovery from Plaintiffs as to Defendants' affirmative defenses is misguided. The Federal Rules authorize discovery "regarding any nonprivileged matter that is relevant to ***any party's claim or defense*** . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). Plaintiffs identify no applicable precedent that that language has any meaning other than what it plainly says.[2]

3. The Interrogatories Do Not Call for Legal Conclusions

The Interrogatories simply ask what Plaintiffs want Defendants to do as to the three main grievances raised in their complaint: *when* ride requests should be made, *how long* rides should take, and *what* routes rides should follow. The relief Plaintiffs *seek* is not "an ultimate question for the trier of fact." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 7129495, at *5 (S.D.N.Y. Dec. 4, 2020). Nor do the Interrogatories resemble those that courts have found to impermissibly call for legal conclusions. *See, e.g., Douglas* v. *Harry N. Abrams, Inc.*, 2016 WL 11645646, at *4 & n.13 (S.D.N.Y. Aug. 23, 2016) ("Does Abrams have a legal responsibility to preserve property for purposes of litigation when it is placed on notice by a demand for its return?"); *Fox* v. *Poole*, 2007 WL 2572104, at *8 (W.D.N.Y. Aug. 31, 2007) (asking whether policy provisions "provide 'equal protection and due process' rights to 'H.I.V. Positive and Non-H.I.V. Positive inmates in an 'equal manner?'"); *Bal* v. *Manhattan Democratic Party*, 2018 WL 11466349, at *10 (S.D.N.Y. Mar. 14, 2018) ("State in detail which rights, privileges, and immunities secured to [plaintiff] by the Fist [sic] and Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. 1983 were deprived to [plaintiff.]").

**B. Plaintiffs' Position**

Plaintiffs oppose this motion and cross move for a protective order striking the interrogatories or, in the alternative, that plaintiffs respond at the close of expert discovery. The interrogatories seek legal contentions on issues for which plaintiff does not bear the burden of proof, and were improperly served before the close of discovery. Defendants' motion also fails to set forth compromises considered, in violation of this Court's Order, ECF 57.

The MTA, Not Plaintiffs, Has the Information Needed to Answer the Interrogatories

Contrary to defendants' claims, plaintiffs have repeatedly informed defendants what plaintiffs seek, what the ADA and other applicable laws require of paratransit service—i.e. service that is comparable to the transportation it provides to nondisabled users, with response times that are "comparable, to the extent practicable." ECF 45, at 1 (citing 42 U.S.C. §§ 12143(a), (c)(1)"). Plaintiffs want the option to travel with the same "flexibility of a life that inevitably cannot always be pre-planned" as nondisabled MTA customers do—without having to schedule all their rides in advance. ECF 45 at 1; see also Opinion and Order, ECF 76, at 17. Plaintiffs have also explained the MTA's own on-demand pilot program provided an example of more comparable

---

[2] Plaintiffs' reliance on *Brooklyn Ctr. for Indep. of Disabled* v. *Bloomberg*, 980 F. Supp. 2d 588, 658 (S.D.N.Y. 2013), is misplaced because liability and remedy were bifurcated here. And, while *Facebook* stated that "Plaintiffs need not develop contentions as to loss causation, which is an affirmative defense," the Interrogatories here do not ask Plaintiffs to "develop contentions" or "devise a theory for an element" but rather just disclose the relief they want so that, among other things, the already scheduled expert discovery period will not be futile. Defendants do not dispute it is their burden to show undue hardship.

3

service to a select few Access-A-Ride (AAR) customers for a brief time. Compl. ¶¶ 14, 59. The MTA knows—but has not yet revealed—the numbers their Interrogatories seek: how long nondisabled passengers wait for fixed route rides (both regularly scheduled and delayed); how quickly AAR rides could arrive; how AAR routes are determined; etc. The MTA also has information about avoidable lateness and about costs of more responsive service.[3]

Document and data production is ongoing and will continue through July, after the MTA requested and received a two-month extension, ECF 82; depositions of MTA witnesses will not begin until August; expert discovery concludes in January 2025, ECF 46. While the first phase of discovery began in November, defendants did not produce a single page until January 8, and only just began to produce most data relevant to the questions posed in the Interrogatories.

Plaintiffs, meanwhile, have provided extensive discovery, including "as to the relief plaintiffs seek." Plaintiffs have produced hundreds of documents and answered two sets of interrogatories. Defendants spent many deposition hours grilling nine witnesses—each named plaintiff, class members, NYIN members, and even a non-class member third party—with detailed questions about their views on appropriate relief. (Defendants demanded this discovery early, allegedly to oppose class certification, but never used it for that purpose.) Still, defendants attempt to turn plaintiffs' claims about issues of systemic discrimination into individual gripes about preferences, insisting that plaintiffs tell them "what routes rides should follow" without discovery on how those routes are currently assembled or functioning. The MTA ignores plaintiffs' contentions that they do not want to be taken through multiple boroughs unnecessarily before arriving at their destinations. See, e.g., Compl. ¶¶ 90, 110.

Notably, plaintiffs served a proposed settlement relief outline on May 24. Plaintiffs have also suggested that the Court could appoint a mutually agreeable expert, paid by defendants, to examine some or all the contested issues and data in this case—for example, a Special Master could examine the MTA's routing. The MTA has made no response.

Defendants' Interrogatories Are Improper

Defendants' Interrogatories seek conclusions and contentions that, as defendants admit, go to an affirmative defense. Such interrogatories need not be answered at any time. See In re Facebook, Inc., No. MDL 12-2389, 2016 WL 5080152, at *4 (S.D.N.Y. July 7, 2016). Here, as in that case, "It would be inappropriate to require Plaintiffs to devise a theory for an element which is not required for their prima facie case." Id. (declining to compel responses to questions about loss causation). Plaintiffs do not bear the burden to specify how many minutes a ride could hypothetically take; they need only show that rides are not comparable to the fixed route service, or include inappropriate capacity constraints. See 42 U.S.C. § 12143(a); Opinion and Order, ECF 76. It is the MTA's burden to explain how the specifics of its AAR system make service that is any more comparable unduly burdensome. See 28 C.F.R. § 35.150(a)(3); Brooklyn Ctr. for Indep.

---

[3] See, e.g., New York City Transit, MTA Access-A-Ride Ridership and On Time Performance Skyrocket as Wait Times Plummet (Feb. 26, 2024, 6:15 p.m.), available at https://new.mta.info/press-release (touting improvements to AAR "on-time performance").

of Disabled v. Bloomberg, 980 F. Supp. 2d 588, 658 (S.D.N.Y. 2013) (ADA plaintiffs need only show plausible modifications for which, facially, the benefits outweigh the costs).

Similarly, interrogatories may not seek "an ultimate question for the trier of fact in this case." In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., No. CV14MD2542, 2020 WL 7129495, at *5 (S.D.N.Y. Dec. 4, 2020). There, the question was whether a business considered less restrictive alternatives in contracts. The party had to state facts in its control—the alternatives considered—but not to characterize them as less restrictive. Id.; see also Norton v. Town of Islip, No. CV043079, 2018 WL 5017744, at *12 (E.D.N.Y. Oct. 16, 2018) (plaintiff not required to respond to interrogatories going to the basis for defendants' good faith defense). Here the question for the trier of fact is the practicability of the response times or changes that plaintiffs might seek to make AAR service comparable. Plaintiffs respectfully request the Court to enter an order striking the Interrogatories. See Fed. R. Civ. P. 26(b)(2)(C); LPD New York v. Adidas Am., No. 15-CV-6360, 2018 WL 6437078, at *6 (E.D.N.Y. Dec. 7, 2018) (striking improper interrogatories).

Defendants' Interrogatories Are Premature Contention Interrogatories

In the alternative, it is well settled in this Court that, "absent exceptional circumstances, [Local] Rule 33 firmly reserves service of contention interrogatories until 30 days before the completion of discovery." In re Facebook, 2016 WL 5080152, at *3 (collecting cases, denying motion to compel). Here, defendants served Interrogatories seek contentions about expert issues before expert discovery even began. Defendants misstate JDS Therapeutics, 2013 WL 5548932, at *1. There, the Court "expressed hesitation about permitting Local Rule 33.3(c) contention interrogatories," but entered a mutually agreed case management plan, and subsequently barred plaintiff from adding contentions in a later expert report. Id. Defendants quote the case management plan here about discovery "as to the relief that Plaintiffs seek," but omit the rest of the sentence: "to the extent available and consistent with the Court's rules." ECF 46 at 5. Those rules are well settled: contention interrogatories must wait until "after discovery is complete and trial is near." Fort Worth Employees' Ret. Fund, 297 F.R.D. at 109-10 (compelling response to request for documents that supported legal claims). At a minimum, plaintiffs are entitled to an order that the Interrogatories need only be answered at the close of expert discovery.

Defendants Failed to Comply with this Court's Order, ECF 57

Even through the Interrogatories are facially improper, plaintiffs attempted to explore compromise. During the meet and confer on May 7, referring explicitly to this Court's order at ECF 57, plaintiffs offered to (1) provide a full outline of proposed relief for settlement purposes (which plaintiffs have now done); (2) revise the responses at the close of fact or expert discovery; and (3) notify defendants as to when the responses could be provided. Greg Laufer for defendants responded, "there can be no compromise."[4] For this reason alone, the MTA's motion should be denied.

---

[4] There is thus no merit to the claim, supra, that "Plaintiffs have refused to tell us when they might be in a position to provide meaningful answers."

5

\*   \*   \*

Respectfully Submitted,

| /s/ *Gregory F. Laufer* | /s/ *Maia Goodell* | /s/ *Britney R. Wilson* |
|---|---|---|
| Gregory F. Laufer | Maia Goodell | Britney R. Wilson |
| Tamar Holoshitz | Emily Bass | New York Law School |
| Kerissa Barron | VLADECK, RASKIN & | Legal Services, Inc. |
| Matthew Clarida | CLARK, P.C. | 185 West Broadway |
| PAUL, WEISS, RIFKIND, | 111 Broadway, Suite 1505 | New York, NY 10013 |
| WHARTON & GARRISON LLP | New York, NY 10006 | Britney.Wilson@nyls.edu |
| 1285 Avenue of the Americas | mgoodell@vladeck.com | |
| New York, NY 10019 | | *Attorney for Plaintiffs* |
| glaufer@paulweiss.com | *Attorneys for Plaintiffs* | |

*Attorneys for Defendants*

To address this discovery dispute, the parties shall appear before the Court for a case management conference on **June 12, 2024 at 12:00 p.m.** via Microsoft Teams. Counsel will receive Microsoft Teams log-in credentials at the email addresses listed on the docket. The public listen-only line may be accessed by dialing: 646-453-4442 | Access Code: 548 276 134#

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge

Dated: June 7, 2024
        New York, New York

---

As a result of prior meet and confer issues, plaintiffs asked to record the May 7 meet and confer. Defendants refused. During the call, Mr. Laufer repeatedly interrupted plaintiffs' counsel, stated that plaintiffs' position was "bizarre," complained in an angry tone that "you keep quoting the rules," and that plaintiffs' legal position "doesn't make any sense to me."