**VLADECK RASKIN CLARK P.C.**

Maia Goodell
(212) 403-7327
mgoodell@vladeck.com

August 19, 2024



**Via ECF**
The Honorable Jessica G.L. Clarke
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 20C
New York, NY 10007-1312

  Re: *Paulino-Santos et al.* v. *Metropolitan Transportation Authority et al.*, 23-cv-03471

Dear Judge Clarke:

  Pursuant to Rule 4(k) of Your Honor's Individual Rules and Practices, the parties submit this joint letter-motion concerning Defendants' discovery requests upon Plaintiff New York Integrated Network ("NYIN").

## I. Plaintiffs' Position

  Defendants should be prohibited from engaging in a fishing expedition by serving burdensome document demands and deposition subpoenas on members of organizational plaintiff the New York Integrated Network ("NYIN"). These objecting members have not and do not intend to offer evidence in this case.

### A. Background

  NYIN is a membership organization comprised of 14 not-for-profit organizations ("member organizations") that provide services to individuals with disabilities. It claims that at least one of its members suffered harm because of the MTA's policies challenged in this case. Defendants have sought sweeping and undifferentiated discovery of every one of NYIN's 14 member organizations,[1] such as searches for electronically stored information ("ESI") for 32 custodians. In an effort at compromise, to date, 11 of NYIN's member organizations agreed to provide discovery. The parties achieved substantial narrowing of the sweeping demands after plaintiffs objected, but the process remains quite burdensome on these non-profits.

  The remaining three organizations, Human Care Services, Jewish Board of Children and Family Services, and United Cerebral Palsy of New York d/b/a ADAPT ("objecting organizations") have no

---

[1] NYIN has identified one member organization, HeartShare, and its affiliated individual class members, Gilbert Plaza and Christina Gilly, who have presented evidence of harm as a result of defendants' operation of Access-a-Ride. It offered evidence of the harm that both HeartShare as an organization and the individual constituents experience from the MTA policies challenged in this litigation. See Plaintiffs' Memorandum of Law in Support of Their Motion for Class Certification (Dkt. 59) at 4.

discovery relevant to this litigation, and will not offer any evidence or assertions of harm in this case. As such, these nonprofits should be shielded from this and later rounds of defendants' demands.

Defendants, however, have stated that they intend to pursue discovery from the objecting organizations. After two meet and confers, the parties have been unable to resolve the dispute.[2]

### B. A Protective Order Is Warranted

#### i. Any Evidence from Objecting Members Would Have Minimal Relevance

The question at the heart of this case is whether the paratransit service the MTA provides is comparable to its fixed-route transit, and whether more comparable service could be provided. Documents and information that go to that question are in the possession of the MTA. NYIN has not claimed a specific percentage of its members that are harmed or a dollar amount or budgetary proportion of harm—no such showing is required or relevant to any claim or defense in this case.[3]

Defendants speculate that discovery from the objecting member organizations is relevant because it may suggest that those members are satisfied with the Access-a-Ride service. However, satisfaction among some customers does not prove or disprove the question of comparability.[4] Furthermore, Defendants' vague assertions regarding the relevance of the documents they seek from the objecting organizations reveal a fishing expedition, for evidence they have no basis to believe exists and that would not be relevant if it did. Nairne v. Ardoin, No. CV 22-178, 2023 WL 5831051, at *1 (M.D. La. Sept. 8, 2023) (where organization "produced all evidence it intends to rely on for associational standing," additional information concerning organization's members was "not proportional to the needs of this case and therefore beyond the scope of permissible discovery."). Defendants have also admitted to "seeking

---

[2] The parties met and conferred on July 16 and July 19, 2024 regarding, inter alia, this issue. Those meet and confers, about 1.5 hours total, took place by phone and included, variously, for defendants: G.Laufer, T.Holoshitz, Y.Barkai, and L.Lehmkuhl; and, for plaintiffs: M.Goodell, B.Wilson, and E.Bass. Plaintiffs explained that the objecting organizations were not participating in the case and would not offer evidence. Defendants initially proposed a stipulation, but the parties were unable to agree on its terms. Defendants said plaintiffs must 1) affirmatively represent that the objecting organizations were not harmed, and 2) allow depositions from the objecting organizations notwithstanding the stipulation. The stipulation and plaintiffs' proposed edits are attached as Exhibit 1. In a meet and confer, defendants rejected any compromise and said they would either move to compel or serve subpoenas on the objecting organizations.

[3] Defendants would of course be free to argue that there is no evidence of harm to the objecting organizations under the stipulation as constructed by plaintiffs. See Gray Mfg. Co., Inc. v. Sefac USA Inc., No. CV 17-4639, 2020 WL 13866444, at *1 (E.D. Pa. Feb. 6, 2020) (denying motion to compel because non-movant agreed to stipulate to disputed issue that would render the requested information irrelevant, so burden outweighed "marginal[]" relevance).

[4] See, e.g., Ellen Waldman & Lola Akin Ojelabi, *Mediators and Substantive Justice: A View from Rawls' Original Position*, 30 OHIO ST. J. ON DISP. RESOL. 391, 403 (2016) (discussing how individual satisfaction does not further the principle of equality for all).

reciprocity," (5/31/24 email from T.Holoshitz to M.Goodell). Such "tit-for-tat" claims are of course not a valid basis for discovery. See John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 145, 148 (S.D.N.Y. 2014).

        ii.        Defendants' Requests Are Burdensome and Invasive

The demands would be burdensome. These organizations are non-profits, each of which has its own leadership and separate computer systems and policies. Defendants' demands bear no proportionality to the needs of the case: Even after narrowing, using the search terms defendants served, searches for the non-objecting organizations involved work by organization staff, leadership, and IT vendors to collect upwards of 15,000 documents. Fewer than 200 (1.3%) were both not privileged and had anything to do with this case. Defendants' late-served document demands[5]—and, now, threatened depositions and subpoenas—will require still more staff and leadership time. Defendants have made chilling demands (such as for complete "member rosters"), which required objection and negotiation to narrow. Objecting organizations, which make no claims with respect to this lawsuit, should not have to similarly undergo such a burden. See Pulphus v. Compass Health, No. 2:21-CV-00930, 2022 WL 474081, at *3–4 (W.D. Wash. Feb. 16, 2022) (granting protective order against discovery into non-profit's organizational structure, revenue, and financial information where non-profit's resources were stretched thin and the discovery request would require digging through electronic data for information with minimal relevance).

Indeed, organizational standing requires that neither the claim asserted, nor the relief requested requires the participation of all an organization's members.[6] Yet, Defendants are not satisfied with the participation of 11 of 14 members. This argument ignores the law and violates the organizations' basic constitutional rights to bring claims and to associate freely. See, e.g. Sierra Club v. Energy Future Holdings Corp., No. 5:10CV156, 2013 WL 12244352, at *3 (E.D. Tex. Dec. 30, 2013) (denying discovery of membership lists based on associational privilege).

* * *

For the foregoing reasons, plaintiffs respectfully request a protective order disallowing discovery demands, deposition notices, or subpoenas for the objecting organizations.

## II. Defendants' Position

Plaintiffs' motion is without merit and contravenes the parties' fundamental discovery obligations. Therefore, in addition to asking that the Court deny Plaintiffs' motion for a protective order, Defendants ask the Court to compel production from the three NYIN member organizations that have refused to respond to Defendants' document requests (the "Objecting NYIN Members"). Plaintiffs' counsel—who represent the Objecting NYIN Members in addition to NYIN itself—have not asserted any colorable

---

[5] On June 3, 2024, after the parties had agreed on a deadline for substantial completion of document discovery, the MTA propounded new requests that sought myriad information about each organization's finances. Since then, on August 3, 2024, the MTA propounded yet another request for NYIN organizations to reveal invasive information about funding from the City, including "all grants or other funding" applied for or received from City agencies.

[6] Pen Am. Ctr., Inc. v. Trump, 448 F. Supp. 3d 309, 320 (S.D.N.Y. 2020) (citing Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977)).

Hon. Jessica G.L. Clarke
August 19, 2024
Page 4

relevance or burden objection. Instead, Plaintiffs' counsel have represented that the Objecting NYIN Members have "declined" to participate in this lawsuit. It should go without saying that this is not a legally defensible objection to valid document requests.[7]

On June 3, 2024, Defendants served their Second Requests for the Production of Documents, seeking, among other things, documents showing any harm allegedly suffered by each NYIN member organization.[8] Ex. A at RFP No. 5-9. Plaintiffs initially agreed to conduct a search, Ex. B (NYIN's Responses to Defendants' Requests No. 5-7), but later reneged by agreeing to produce documents from only 11 of the 14 NYIN member organizations (only four of which have actually produced documents to date). Under their newly asserted position, Plaintiffs refused to even search for documents from the other three members. That position must be rejected.

There can be no dispute that the information sought is relevant, and Plaintiffs' assertion that Defendants' requests are a "tit-for-tat"[9] "fishing expedition" is unfounded. NYIN is a named plaintiff and a membership organization with no meaningful existence apart from its 14 member organizations. Ex. C at 18-19 (NYIN's bylaws). NYIN has no independent employees and provides no direct services. Ex. D, Tr. of M. Sturiale 32:24-33:18, 36:18-19, 40:25-41:5. NYIN can only act through its members, which collectively voted to approve the filing of this action. Ex. D, Tr. of M. Sturiale 47:13-49:11; Ex. E, Tr. of Alvarez-Richards 41:11-15.

---

[7] On July 16, 2024, the parties met and conferred concerning Plaintiffs' refusal to provide discovery from the three Objecting NYIN Members. As a compromise, Defendants drafted a proposed stipulation making it clear that the Objecting NYIN Members would not be required to respond to Defendants' document requests (but otherwise reserving Defendants' right to take depositions of such Objecting NYIN Members, as needed) and stipulating that the Objecting NYIN Members were unharmed by the challenged conduct. Contrary to Plaintiffs' assertion that it was Defendants who "rejected any compromise," *Plaintiffs* declined Defendants' proposed stipulation and the parties then mutually agreed they were at impasse.

[8] Plaintiffs' characterization of these requests as "late-served document demands" is incorrect and misleading. According to the Civil Case Management Plan and Scheduling Order in place at the time Defendants served their Second Requests for the Production of Documents (June 3), the close of fact discovery was not set to occur until September 30, ECF No. 44 at 2, and the "Second Phase" of discovery, including "fact written discovery" and "discovery as to the relief that Plaintiffs seek," was not scheduled to conclude until July 24, ECF No. 82. Defendants' Second Requests for the Production of Documents, requesting information as to NYIN's purported financial harm, squarely fall within these parameters in adherence to the agreed-upon schedule. And in any event, NYIN was still obligated to respond to Defendants' pre-existing *First* Request for Production of Documents, which were served on Plaintiffs on November 22, 2023.

[9] The "reciprocity" referenced by Plaintiffs above was a request by Defendants for Plaintiffs to provide a hit-count report for a specific search term. Defendants previously cooperated with requests for hit counts, while Plaintiffs ultimately did not.

Similarly, Plaintiffs have not articulated any particular burden, let alone one that would "justify curtailing discovery." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012). Instead, Plaintiffs rely on the purported burden to the *other* non-objecting NYIN member organizations, but the fact that these members—which are also non-profits and so presumably have similar constraints—already collected, reviewed, and produced responsive documents demonstrates that Defendants' requests are not overly burdensome. Plaintiffs offer no other basis,[10] and the law that Plaintiffs rely on is inapposite. *Cf. Pulphus* v. *Compass Health*, No. 2022 WL 474081, at *2–4 (W.D. Wash. Feb. 16, 2022) (non-profit defendant organization had **already produced** documents and responded to written interrogatories).

That Plaintiffs have agreed to produce from 11 of NYIN's members the very same documents Defendants are seeking here is an admission of their relevance and the absence of any undue burden. Perhaps in tacit recognition of that concession, Plaintiffs argue that it is somehow acceptable to shield the Objecting NYIN Members from discovery because Plaintiffs now do not intend to introduce evidence of harm as to those entities, while also refusing to stipulate that the Objecting NYIN Members were *actually* unharmed. Plaintiffs forget that the parties stipulated to the certification of a class specifically based on Plaintiffs' explicit assertions of alleged harm to **all** of NYIN's member organizations (none of which were excluded at the time) and the 20,000-plus individuals those members serve. Decl. of M. Sturiale, ECF 69, at ¶¶ 12, 15. Plaintiffs' new argument that only some undefined sub-part of NYIN was harmed flies in the face of Plaintiffs' repeated allegations to the contrary. *See* Compl. ECF 1, at ¶¶ 155, 164.

More critically, Plaintiffs' position is not compatible with the relevant legal standards. When a party initiates litigation, it invites discovery; it does not get to insulate itself by unilaterally claiming that it "ha[s] no discovery relevant to this litigation." If that were the case, the opportunities for discovery mischief would be practically boundless. That the three Objecting NYIN Members now do not feel like opening up their files or putting forth witnesses is irrelevant. No litigant is entitled to cherry-pick what they produce. But that is exactly what Plaintiffs are requesting, evidently trying to use their claim of nonparticipation as both a sword and a shield—presenting only the evidence they like as to the NYIN members who *were* allegedly harmed, while obstructing Defendants' discovery into the Objecting NYIN Members who they now suggest were *not* harmed. Defendants are entitled to explore the question of harm with every NYIN member—whether they feel like participating or not.

For the foregoing reasons, Plaintiffs' motion for a protective order should be denied and the Court should compel the Objecting NYIN Members to respond to Defendants' requests.

---

[10] Plaintiffs' reliance on the standard for organizational standing is inapposite, as this standard is not the same as the standard for discovery. Parties are entitled to discovery of documents in the "possession, custody, or control" of other parties, Fed. R. Civ. P. 34(a)(1), so long as they are "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1). Both requirements have been construed broadly by courts in this District. *See In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007); *Condit* v. *Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004). Both requirements are clearly satisfied here where NYIN has "control" over the documents of the three Objecting NYIN Members given its practical ability to access them (which Plaintiffs have not contested) and given that the requested documents address NYIN's allegations of financial harm.

Hon. Jessica G.L. Clarke
August 19, 2024
Page 6

Respectfully Submitted,

| /s/ | /s/ | /s/ |
|---|---|---|
| Gregory F. Laufer | Maia Goodell | Britney R. Wilson |
| Yotam Barkai | Emily Bass | New York Law School |
| Tamar Holoshitz | VLADECK, RASKIN & CLARK, P.C. | Legal Services, Inc. |
| Kerissa Barron | 111 Broadway, Suite 1505 | 185 West Broadway |
| Matthew Clarida | New York, NY 10006 | New York, NY 10013 |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | mgoodell@vladeck.com | Britney.Wilson@nyls.edu |
| 1285 Avenue of the Americas | *Attorneys for Plaintiffs* | *Attorney for Plaintiffs* |
| New York, NY 10019 | | |
| glaufer@paulweiss.com | | |

*Attorneys for Defendants*

To address this discovery dispute, the parties shall appear before the Court for a case management conference on **September 4, 2024 at 3:00 p.m.** via Microsoft Teams. Counsel will receive Microsoft Teams log-in credentials at the email addresses listed on the docket. The public listen-only line may be accessed by dialing: 646-453-4442 | Access Code: 970804288#

SO ORDERED.

*[signature: Jessica Clarke]*

JESSICA G. L. CLARKE
United States District Judge

Dated: August 20, 2024
       New York, New York