

**Via ECF**

The Honorable Jessica G.L. Clarke
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1040
New York, NY 10007-1312

Re: *Paulino-Santos et al.* v. *Metropolitan Transportation Authority et al.*, 23-cv-03471

Dear Judge Clarke:

Pursuant to Rule 4(k) of Your Honor's Individual Rules and Practices and this Court's Order of November 7, 2024 (ECF 116), the parties re-submit this joint letter-motion (the "Motion") to seek the Court's resolution of a dispute regarding Plaintiffs' request for the submissions (the "Submissions") received by Defendants in response to their 2024 Request for Proposals (SSE No. 468625, the "Scheduling Software RFP") for a new paratransit scheduling engine.

The parties met and conferred on November 14, 2024, for approximately 16 minutes on this topic. Attorneys T. Holoshitz, G. Laufer, Y. Barkai, K. Barron and M. Clarida participated for defendants; M. Goodell and M. Dorfman participated for plaintiffs.

**A.  Plaintiffs' Position**

Plaintiffs respectfully renew their motion to compel production of the Submissions, and apologize for the prior violation of the Court's meet and confer requirement. The parties have now met and conferred, without audio recording. Defendants offered no compromise and rejected several compromises that plaintiffs proposed. Therefore, plaintiffs ask the Court to compel production of this very narrowly defined set of highly relevant documents.

At the meet and confer, the parties agreed that their initial positions were as outlined in ECF 115. Defendants reiterated their procedural objections (See ECF 115 at 3-4). Plaintiffs offered as a compromise to serve a formal document request for the Submissions now, if defendants would agree to produce them when a response was due. Defendants responded that the parties were not going to agree on procedure.

Defendants said a main concern for them is relevance, and spent several minutes repeating their relevance objections. (See ECF 115 at 4-5) Plaintiffs explained again that the documents are relevant: The Submissions presumably contain detailed proposals for an updated scheduling and routing system. This case challenges Access-A-Ride's scheduling and routing policies, including whether Defendants' own actions (or lack thereof, in making possible and necessary changes) constitute unlawful discrimination or capacity constraints that significantly limit the availability of paratransit in violation of the ADA, the Rehabilitation Act, and/or the NYCHRL. (See ECF 115 at 2; see also ECF 76) Offers to the MTA for scheduling and routing systems, and the claimed technical capabilities or limitations of those systems to change the challenged policies, such as the pattern or practice of untimely pickups and drop-offs and trips of excessive lengths, are relevant. Defendants argued that the Submissions had no relevance to those questions because a contractor seeking business may be providing inaccurate information. Plaintiffs responded that argument

goes to weight, not discoverability. Defendants maintained their position that the Submissions are not relevant.

During the relevance discussion, plaintiffs offered to consider a stipulation on the issues they believe the Submissions bear, to the effect that the MTA could stipulate that this new scheduling engine could practicably provide some level of more comparable scheduling and routing than what Defendants currently provide. Plaintiffs offered to give it more thought if defendants were open to considering a stipulation. For example, the MTA could agree not to offer any evidence or testimony about the Scheduling RFP or defendants' claimed plans to replace the scheduling and routing system. Plaintiffs also suggested that defendants could provide a proposal based on the substance of the documents. Defendants said that a stipulation along the lines plaintiffs suggested would amount to conceding liability and did not provide any counterproposal.

Plaintiffs also explained that the request was far narrower than the originally served requests (see ECF 115, Ex. 1), and further narrowed from the follow up email request for "all responses received, and any related contract documents." (See ECF 115 at 3) Plaintiffs have narrowed the current request to just the Submissions. Defendants maintained their refusal to produce the documents.

Finally, as to the burden objection (ECF 115 at 5), plaintiffs asked defendants to explain why the Amended Stipulated Protective Order ("Protective Order," ECF 93) was insufficient, to see if a compromise could address their concerns. Defendants repeated their position that the documents are highly confidential and would not be subject to a freedom of information request. (ECF 115 at 5) They further expressed concern that the Attorneys' Eyes Only (AEO) provision in the existing Protective Order would not cover the Submissions. Plaintiffs offered to amend the Protective Order as needed, and to restrict the documents to attorneys and experts. Defendants repeated that the documents are not relevant and did not further explain why the AEO proposal was inadequate.

For the foregoing reasons and those set forth in ECF 115, plaintiffs request the Court compel production of the Submissions.

## B. Defendants' Position

Plaintiffs' motion to compel should be denied.  As a threshold matter, there is nothing to compel because Plaintiffs have not actually served any FRCP 34 requests for the Submissions they are again demanding.  Beyond that fatal impediment, Plaintiffs have also still failed to show the relevance of the Submissions, nor overcome the significant burden producing them would impose on Defendants, including the commercial sensitivities and confidentiality concerns relating to third parties not present here.  More specifically:

*First*, there are several procedural obstacles that foreclose Plaintiffs' request.  Plaintiffs have known about the Scheduling Software RFP since at least April 29, 2024, when Defendants raised it in their responses to Plaintiffs' interrogatories.  Despite this, Plaintiffs never served a request for Submissions to the RFP and never raised the issue in the parties' numerous meet and confers or at any other time.  Indeed, Plaintiffs' first mention of the Submissions was in an informal email on August 30, 2024, days before the close of document discovery.  Recognizing the belatedness of their new, informal request, Plaintiffs have now attempted to claim that the

Submissions somehow fall under their previously served document requests. But Plaintiffs still cannot explain how their request for the Submissions is embraced by ***any*** of their 99 prior document requests that were the subject of extensive, months-long negotiations and scope agreements that at no time even alluded to the Submissions. As explained in the prior letter-motion, it is not. ECF 115 at 4. The Submissions do not fall within any of Plaintiffs' prior document requests and, in any event, were created outside of the relevant time period *as defined by Plaintiffs themselves*. *Id.*

Apparently conceding this deficiency, Plaintiffs now offer "to serve a formal document request for the Submissions" if Defendants "agree to produce them." But Plaintiffs' untimely and procedurally flawed offer to belatedly comply with their obligations under the Federal Rules by serving a proper request turns discovery on its head: litigants do not get to tell each other, "I will serve you with a request if you agree to produce what I want."

*Second*, Plaintiffs have also still failed to show that the Submissions are actually relevant to their claim. At bottom, the Submissions do not bear on Access-A-Ride's policies, practices, or performance, subjects on which Defendants' have already produced tens of thousands of pages and given many hours of deposition testimony. Nor do the Submissions pertain in any way to what constitutes "comparable" service and whether Access-A-Ride's current software provides or future software would provide comparable service. Indeed, "comparability" is mentioned nowhere in the 336 page Scheduling Software RFP and it is unclear how software—as opposed to the actual performance of the Access-A-Ride service—could bear on the service's comparability to fixed route transit at all. While Plaintiffs summarily argue above that this case is about Access-A-Ride's current "scheduling and routing policies," including "Defendants' own actions" in making or not making "possible and necessary changes," they also do not show how the Submissions could bear on those issues. Nor could they credibly do so. As explained above, the Submissions do not involve Access-A-Ride's current "scheduling and routing policies." Nor do they relate to "Defendants' own actions" in furtherance of any "changes," as they are proposals from third parties that would not shed any light on the MTA and its actions or intentions. And, to the extent any documents exist that bear on Defendants' "actions," they are the Scheduling Software RFP itself and emails discussing its drafting and issuance, all of which have been produced to Plaintiffs. The Submissions also do not show what changes may be "possible and necessary"—to quote Plaintiffs—for the MTA to implement. Simply put, the Submissions are marketing documents. They are bids from proposers that are merely initial proposals in a much longer negotiated RFP process. They do not speak to what changes are "necessary" under any applicable legal standard or what changes are actually "possible" for the MTA to implement. As the MTA has experienced, including related to proposals for scheduling software, vendors often pitch products that may not exist, are unable to meet MTA needs, or the vendor is not able to ultimately build. For all these reasons, the Submissions are not probative of the technical feasibility of any "changes" to "scheduling and routing policies," which is more properly the subject of expert discovery in any event. The Submissions' irrelevance—and Plaintiffs' failure to show otherwise—are yet another independently sufficient reason to deny Plaintiffs' motion.

*Third*, the Submissions' lack of relevance is particularly notable in light of the substantial burden associated with their production. As discussed in ECF 115, the Submissions implicate the rights of numerous uninvolved third-party vendors and contain thousands of pages of those vendors' technical, competitive, and confidential information, including those vendors' trade secrets and financial information that is highly confidential and entirely irrelevant to this matter.

For these reasons, as well as the need to ensure the integrity of a statutorily mandated government contracting process, the Submissions are subject to a strict confidentiality provision that binds both Defendants and the proposers. ECF 115 at 5. In order to produce the Submissions, the MTA would have to go through an onerous process of notifying numerous third parties and providing them an opportunity to object or limit the disclosures, including by requiring the application of redactions. *See* Ex. 6-2 (ECF 115-08) § 33.3. This objection and redaction process would likely take many weeks if not months to complete, further delaying the close of fact discovery. The burden of this request is particularly inappropriate at this late stage of discovery and because (as explained above) Plaintiffs have yet to serve a proper request for the documents sought, and the documents lack relevance to begin with. Plaintiffs point to the Amended Stipulated Protective Order, but the Protective Order would do nothing to lessen Defendants' burden to notify each proposer and enable those proposers to object to or limit the scope of potential disclosures, as required by Defendants' and the proposers' separate contractual agreements.

*Last*, forcing the MTA to reveal the highly confidential details of the proposers' Submissions while the proposers are in active negotiations with Defendants and active competition against one another for the contract, could have untold ramifications for the RFP process here and more generally. Prior to the award of a contract (as is the case here), the bidding process, including information about proposals, is strictly confidential between MTA staff on the contract committee and the proposers; those on the contract committee are not even allowed to discuss the proposals with others at the MTA. ECF 115 at 5. Strict confidentiality is required—and critically necessary—in order to ensure competitive bidding and the integrity of the government contracting process. The need for confidentiality in the government contracting process prior to an award is well recognized. Under the Procurement Integrity Act, federal employees and their agents are prohibited from "disclos[ing] contractor bid or proposal information or source selection information before the award of a Federal agency procurement contract." 41 U.S.C. § 2102; *see also* H.R. Rep. No. 104-563, at 327 (prohibiting release of contractor proposals under FOIA). Similarly, New York law recognizes a "restricted period" between when a contract solicitation begins and when the contract is awarded during which only designated contacts can discuss the contract, and restricts documents that could impair contract awards from disclosure under FOIL. N.Y. State Fin. Law § 139-j; N.Y. Pub. Off. Law § 87. And, "information which, if disclosed, would impair present or imminent contract awards" and documents containing "trade secrets or other records submitted to the authority by a commercial enterprise or derived from information obtained from a commercial enterprise . . . which, if disclosed, would cause substantial injury to the competitive position of the subject enterprise" are among the categories of information the MTA is expressly allowed to keep confidential. N.Y. Comp. Codes R. & Regs. Titl. 21 § 1001.5. More broadly, if private parties have reason to believe that their competitive and confidential information could be the subject of discovery in circumstances where the materials at issue are untethered from the core issues in the case, that would inevitably have a chilling effect on the private sector's willingness to participate in the RFP process altogether.

In the parties' November 14 meet and confer, Defendants conveyed their position that, for the procedural and substantive reasons outlined above in the prior motion, Defendants object to producing the Submissions. Plaintiffs purported "compromises"—first made in the meet and confer and now here—are in name only. For example, Plaintiffs say that, in lieu of producing the Submissions, Defendants could stipulate that "this new scheduling engine could practicably provide some level of more comparable scheduling and routing than what Defendants currently provide." Plaintiffs' offer is, respectfully, absurd. Such a "stipulation" would concede ultimate

issues in the case, including the central legal question of "comparability" and Defendants' defense of "practicability." Such a stipulation would also be factually and legally false. Put simply, this is not a genuine offer of compromise. Similarly, it is not true that Plaintiffs have somehow winnowed their request for the Submissions to be "far narrower than the originally served requests" because they seek only the Submissions and not any related contracts. As explained above, the Submissions do not fall within any of Plaintiffs' previously served requests, so Plaintiffs' belated request for them plainly cannot constitute a "narrowed" version of requests that never existed. Moreover, Defendants had already produced documents in compliance with those requests as of July 11, 2024, the substantial completion date, before Plaintiffs first raised this issue. To the extent Plaintiffs' argument is that they have narrowed their informal request after raising it in their August email, that too is a meaningless compromise offer. Plaintiffs' August 30 email requested the "RFP, all responses received, and any related contract documents." As Defendants have repeatedly explained to Plaintiffs, the RFP process is still in the negotiations stage, so no contract has been awarded yet. Thus, the only documents that exist that would be potentially responsive to Plaintiffs' informal request are the RFP, which Defendants have produced, and the Submissions, which Plaintiffs seek to compel here. For these reasons, Plaintiffs' purported compromise positions are not really compromises at all.

It is not appropriate at this late stage of discovery to grant Plaintiffs' request for documents that they never requested, that are not relevant to the claims at issue in this litigation, and that would be highly burdensome to produce and implicate the substantial rights of uninvolved third parties. Defendants cannot and should not have to agree to Plaintiffs' spurious offers of "compromises" that would either result in Defendants producing, in their entirety, the very documents Plaintiffs originally sought to compel, or conceding liability in this case. For these reasons, Plaintiffs' motion to compel production of the Submissions should be denied.

*    *    *

Respectfully Submitted,

/s/ *Gregory F. Laufer*
Gregory F. Laufer
Yotam Barkai
Tamar Holoshitz
Kerissa Barron
Matthew Clarida
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON
LLP
1285 Avenue of the Americas
New York, NY 10019
glaufer@paulweiss.com

*Attorneys for Defendants*

/s/ *Maia Goodell*
Maia Goodell
Emily Bass
Matthew Dorfman
VLADECK, RASKIN &
CLARK, P.C.
111 Broadway, Suite 1505
New York, NY 10006
mgoodell@vladeck.com

*Attorneys for Plaintiffs*

/s/ *Britney Wilson*
Britney R. Wilson
New York Law School
Legal Services, Inc.
185 West Broadway
New York, NY 10013
Britney.Wilson@nyls.edu

*Attorney for Plaintiffs*

Based on the parties' submission, the arguments by counsel at the conference on January 7, 2025, and Defendant's *in camera* submission of a sample proposal, the Court denies Plaintiffs' motion to compel. The burden on Defendants to produce these documents outweighs their likely benefit. Fed. R. Civ. P. 26(b)(1). Furthermore, such production is likely to unreasonably extend discovery. The Clerk of Court is respectfully directed to terminate ECF No. 118.

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge

Dated: January 15, 2025
      New York, New York